UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

                                        01 Civ. 3346 (MGC)

In re

THE WARNACO GROUP, INC.                      <u>OPINION</u>
SECURITIES LITIGATION (II)


-------------------------------X



APPEARANCES:


            LOVELL STEWART HALEBIAN, LLP
            Attorneys for Plaintiffs
            500 Fifth Avenue
            New York, NY 10110

            By:  Christopher Lovell, Esq.
                 Frederick W. Gerkens, III, Esq.
                 Robert W. Rodriguez, Esq.




            DAVIS POLK & WARDWELL
            Attorneys for Deloitte & Touche LLP
            450 Lexington Avenue
            New York, NY 10017

            By:  Daniel F. Kolb, Esq.
                 Amelia T.R. Starr, Esq.
                 Gina Caruso, Esq.

**Cedarbaum, J.**

This action is the second of two securities class actions filed in the wake of a series of belated financial restatements made by The Warnaco Group, Inc. ("Warnaco"). The present action is brought on behalf of all purchasers of Warnaco common stock between August 15, 2000 and June 8, 2001. Plaintiffs brought claims against Warnaco and several of its officers and directors for violation of Sections (10)(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and a common law claim for breach of fiduciary duty. In the course of the litigation, plaintiffs amended the complaint to add Warnaco's outside accountant, Deloitte & Touche LLP ("Deloitte").

On September 26, 2003, Deloitte moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). After the claims against Deloitte had been dismissed without prejudice, plaintiffs filed an amended complaint. Deloitte again moved to dismiss the claims against it. At the oral argument, I instructed plaintiffs to file another amended complaint which clearly sets forth the allegations against Deloitte, and reserved decision on Deloitte's motion. On January 13, 2005, plaintiffs filed a 116-page amended complaint against Deloitte.

BACKGROUND

This action arises from Warnaco's collapse in 2001 after numerous disclosures that it had significantly misreported its financials for several years. Plaintiffs allege that Deloitte, Warnaco's outside accountant during 2000 and 2001, knowingly made a number of affirmative misstatements during the class period. Plaintiffs also allege that Deloitte failed to correct statements it had made before the class period after discovering that they were false.

On May 16, 2000, before the class period, Warnaco filed its annual audited financial statement on Form 10-K for the fiscal year 1999 ("FY1999"). Amend. Compl. ¶¶ 50, 74. As later restatements revealed, that financial statement contained numerous errors. It overstated Warnaco's total stockholder equity by $30,131,000, or nearly five and one half percent of the reported amount of $563,316,000. Id. ¶¶ 1, 75. $26,000,000 of this overstatement was attributable to the false valuation of reserves for returned, unsold merchandise, and $4,131,000 was attributable to the misreporting of intercompany account balances between Warnaco and its subsidiary, Designer Holdings Ltd. ("Designer Holdings"). Id. ¶¶ 3, 11, 75. In addition, the financial statement understated accounts payable by $18,424,000 as a result of errors relating to Designer Holdings, and overstated accounts receivable by $64,100,000, inventory by $11,900,000, and other assets by $6,500,000. Id. ¶ 75.

The FY1999 financial statement was accompanied by an audit letter from Deloitte. The letter stated that Deloitte had conducted an audit of Warnaco in accordance with Generally Accepted Auditing Standards ("GAAS"), and that, in Deloitte's opinion, Warnaco's financial statement "present[ed] fairly, in all material respects, the financial position of The Warnaco Group, Inc. and subsidiaries as of January 1, 2000, and the results of their operations and their cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America." Id. ¶ 80.

Plaintiffs allege that in September 2000, within the class period, a Warnaco executive began reporting to management about accounting errors, potentially involving tens of millions of dollars, relating to Warnaco's Designer Holdings subsidiary. Id. ¶¶ 134-35. In November 2000, these errors were discussed at the third quarter audit review meeting, which Deloitte personnel attended. Id. ¶¶ 132, 136. According to the amended complaint, as a result of that meeting, Deloitte became aware of the Designer Holdings errors in the audited FY1999 financial statement.[1] Id. ¶ 136.

---

[1] The amended complaint is unclear as to whether Deloitte became aware in the fall of 2000 of the full extent of the Designer Holdings errors, or only the $4,131,000 error attributable to misreporting of intercompany account balances. Compare Amend. Compl. ¶ 132 ("[B]y November 2000, Deloitte knew that Warnaco's intercompany accounts with Designer Holdings were out of balance and that Warnaco's financial condition was potentially inflated as a result."), with id. ¶ 136 (alleging that "the Designer Holdings related errors" were discussed in the third quarter 2000 audit

In addition, the complaint alleges that in October 2000, Warnaco's true financial condition was such that the company was in default of its debt to equity ratio covenants under its credit agreements. Id. ¶¶ 4, 119-20, 137-40. To avert discovery of this fact, Warnaco issued an interim financial statement on November 14, 2000 that misreported its condition. Id. ¶¶ 2, 10, 122. The correct numbers for Warnaco's cash and long term indebtedness, according to the complaint, were made known to Deloitte in writing and orally by November 3, 2000. Id. ¶¶ 2, 10. They were also publicly disclosed in a press release on November 2, 2000. Id. ¶ 119. However, before issuing the November 14, 2000 interim financial statement, Warnaco's management allegedly changed these numbers. Id. ¶ 10. According to the complaint, Deloitte knew but failed to inform the public that Warnaco was no longer in compliance with its debt covenants. Id. ¶ 173.

The complaint also alleges that, within the class period, Warnaco issued several quarterly financial statements that contained numerous falsehoods. In addition to failing to disclose Warnaco's default under its credit agreements, these quarterly statements significantly overstated stockholder equity, accounts receivable, revenues, and assets; substantially

_____

review meeting, which Deloitte attended). For the purpose of this motion, this ambiguity is construed in plaintiffs' favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

understated liabilities; and misclassified various inventory write-offs as "restructuring charges" or charges relating to "strategic review." Id. ¶¶ 90, 97-98, 101, 115, 117, 125-28. Plaintiffs allege that, although these quarterly statements were unaudited, id. ¶¶ 93, 113, they were "examined or reviewed" by Deloitte and referred investors "for further information" to the annual financial statements that Deloitte had audited, id. ¶¶ 71, 93, 106, 113, 147, 273.

On March 29, 2001, after it had become publicly known that Warnaco was not in compliance with its credit agreements, Warnaco issued a press release announcing that it had received a temporary waiver from its lenders and that it was negotiating permanent amendments to its credit agreements in order to avoid a possible default. Id. ¶ 154. On the same day, Warnaco issued a chargeback restatement, acknowledging that it had understated reserves for returned, unsold merchandise in its financial statements for the years 1997 to 1999. Id. ¶¶ 2, 60, 153. According to the complaint, Deloitte first became aware of this understatement in mid-February 2000, but advised Warnaco not to disclose it until the Securities and Exchange Commission ("SEC") began to investigate the company in early 2001. Id. ¶¶ 2, 9, 59-60.

On April 13, 2001, Warnaco reported that it had received an extension of the temporary waiver from its lenders, and that it continued to be in discussions to revise its credit agreements.

Id. ¶ 156.  On April 17, 2001, Warnaco filed with Form 10-K its annual audited financial statement for the fiscal year 2000 ("FY2000").  Id. ¶ 158.  According to the complaint, that statement contained a number of significant falsehoods.  It overstated stockholder equity and inventory by, respectively, $97,675,000 and $1,252,000, and understated liabilities and accounts payable by a total of $96,762,000.  Id. ¶ 160.

The FY2000 financial statement was accompanied by an audit letter from Deloitte.  Id. ¶ 158.  In the letter, Deloitte stated that it had audited Warnaco in accordance with GAAS, and that "in our opinion, [Warnaco's] consolidated financial statements present fairly, in all material respects, the financial position of The Warnaco Group, Inc. and subsidiaries as of December 30, 2000 and January 1, 2001, and the results of their operations and their cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America."  Id. ¶ 166.  In addition, however, Deloitte's audit letter stated that "[t]he Company was not in compliance with certain covenants and ... has a working capital deficiency." These issues, Deloitte warned, "raise substantial doubt about [Warnaco's] ability to continue as a going concern .... The company's ability to continue to operate as a going concern is dependent on the outcome of negotiations [with its creditors] or upon its ability to refinance its debt."

On April 20, 2001, Warnaco issued a $190,459,000 restatement of its third quarter 2000 interim financial statement. <u>Id.</u> ¶ 170. Also in April 2000, Deloitte issued a 'material weakness' letter to Warnaco, which was not publicly disclosed, detailing the financial chaos within the company, including the failure to reconcile intercompany accounts and to have reliable accounting for international operations. <u>Id.</u> ¶¶ 5, 181.

In the end, plaintiffs allege, "Warnaco's true undisclosed financial condition rendered [it] unable to obtain waivers and caused it to have to file for bankruptcy." <u>Id.</u> ¶ 169. On June 11, 2001, Warnaco announced that it had voluntarily petitioned for protection under Chapter 11 of the Bankruptcy Code. <u>Id.</u> ¶ 197. Shortly thereafter, Warnaco began issuing a number of restatements of the financial statements audited by Deloitte. <u>Id.</u> ¶¶ 4, 198. According to the complaint, these restatements disclosed multiple violations of GAAS by Deloitte in the audit of the FY1999 and FY2000 financial statements. <u>Id</u>. ¶¶ 167, 203, 210-11.

DISCUSSION

The standard applied to a motion to dismiss a complaint is well-established. A court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002); <u>King v. Simpson</u>, 189 F.3d 284, 287

(2d Cir. 1999).  A complaint may be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [complaint's] allegations." Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996) (internal quotation omitted).  The Court need not, however, credit conclusory statements unsupported by factual allegations.  De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).

Deloitte argues that plaintiffs' amended complaint fails to state a claim for securities fraud because it does not allege a material misleading statement or omission attributable to Deloitte within the class period and because it fails to plead loss causation.  In addition, Deloitte contends that the amended complaint fails to state a claim for breach of fiduciary duty because Deloitte owed plaintiffs no such duty.

<u>Securities Fraud Under Section 10(b) and Rule 10b-5</u>

Section 10(b) of the Securities Exchange Act protects investors by making it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the SEC, makes it unlawful: "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

To state a claim under Section 10(b) and Rule 10b-5 for a misleading statement or omission, as plaintiffs seek to do here, plaintiffs must allege that the defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was

the proximate cause of their injury." <u>Lentell v. Merrill Lynch & Co., Inc.,</u> 396 F.3d 161, 172 (2d Cir. 2005).    The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that, where misleading statements or omissions under Section 10(b) are alleged, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

A.    <u>Misleading Statement or Omission</u>

Plaintiffs contend that Deloitte made several actionable misstatements or omissions during the class period.  First, they argue that Deloitte had a duty to correct the Designer Holdings errors in Warnaco's FY1999 financial statement after discovering them in the fall of 2000.  These errors, plaintiffs allege, were relied upon by investors during the class period because they appeared in the most recent audited financial statement in existence at the time, to which investors were periodically referred by Warnaco's class period quarterly statements.

It is settled that silence where there is a duty to disclose can constitute a false or misleading statement within the meaning of Section 10(b) and Rule 10b-5.  See <u>Wright v. Ernst & Young</u>

LLP, 152 F.3d 169, 177 (2d Cir. 1998) (citing Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988)). Consistent with that principle, "[a]ccounting firms ... have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying." Wright, 152 F.3d at 177 (internal quotation omitted); see also Shapiro v. Cantor, 123 F.3d 717, 721 (2d Cir. 1997) (noting that "in a situation in which the accountant 'gives an opinion or certifies statements' about a company--statements which the accountant later discovers may not have been accurate--then the accountant has a duty to disclose the fraud to the public") (quoting In re Cascade Int'l Sec. Litig., 894 F. Supp. 437, 443 (S.D. Fla. 1995). The duty to correct previous statements, however, extends only to statements the accounting firm audited. See IIT, an Int'l. Inv. Trust v. Cornfeld, 619 F.2d 909, 927 (2d Cir. 1980) ("Andersen had no independent duty to see to the correction of portions of the prospectus other than the financial statement it prepared.").

Deloitte contends that even if it had discovered the Designer Holdings errors in the fall of 2000, it had no duty to disclose them because they were, as a matter of law, immaterial. To state a cognizable claim for securities fraud, plaintiffs must allege that Deloitte made misrepresentations that were material. Basic, 485 U.S. at 238. A statement or omission is material if

12

there is "a substantial likelihood" that it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). The question of materiality "may be characterized as a mixed question of law and fact," TSC Indus., 426 U.S. at 450, and is generally inappropriate for determination at the pleading stage of litigation, see Ganino, 228 F.3d at 166 ("We believe it is inappropriate to determine at this stage of the litigation that [overstatement of income by 17.7% after tax and 11.7% pre-tax for a given quarter, and of 11.9% after tax and 8% pre-tax for a period of six months], both in absolute terms and as percentages of total net income ... were immaterial as a matter of law."); see also Oleck v. Fischer, No. 73 Civ. 1460 (CSH), 1979 WL 1217, at *13 (S.D.N.Y. June 8, 1979) ("Nondisclosed facts are not viewed in isolation. Materiality depends upon all the circumstances of the case.").

According to the amended complaint, Deloitte discovered in the fall of 2000 that the audited FY1999 financial statement overstated stockholder equity by $4,131,000 of a total of $563,316,000 and understated accounts payable by $18,424,000. Amend. Compl. ¶¶ 11, 75. Deloitte argues that courts have held comparable errors immaterial as a matter of law. See, e.g., In re Duke Energy Corp. Sec. Litig., 282 F. Supp.2d 158, 161

13

(S.D.N.Y. 2003) ("[A]n inflation of $217 million in the Company's revenues for the relevant period amounts to about 0.3% of Duke Energy's total revenues for that period [which constitutes] an immaterial percentage as a matter of law."); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546-47 (8th Cir. 1997) (alleged overstatement of assets by 2 percent was immaterial as a matter of law); In re Newell Rubbermaid Inc. Sec. Litig., No. 99 C 6853, 2000 WL 1705279, at *8 (N.D. Ill. Nov. 14, 2000) (failure to disclose expenses amounting to less than one percent of overall revenues was immaterial as a matter of law).

The alleged overstatement of Warnaco's stockholder equity in the FY1999 financial statement amounted to 0.73 percent. The complaint provides no indication of the relative measure of the understatement of accounts payable attributable to Designer Holdings allegedly made in the FY1999 financial statement. If that understatement was of comparably small proportion, Deloitte's argument that it had no duty to correct the Designer Holdings errors is not without merit. However, since, as discussed below, plaintiffs fail to allege loss causation with respect to Deloitte's failure to correct these errors, I need not decide whether the errors were immaterial as a matter of law.

Plaintiffs also seek to hold Deloitte responsible for falsehoods contained in quarterly financial statements issued by Warnaco during the class period. Although the amended complaint

alleges that these statements contained a notation that they were unaudited, plaintiffs contend that they are attributable to Deloitte because Deloitte "examined and reviewed" them.[2]

In Central Bank v. First Interstate Bank, 511 U.S. 164 (1994), the Supreme Court held that a plaintiff cannot bring a claim for aiding and abetting securities fraud under Section 10(b). In Shapiro, the Second Circuit, observed that "[i]f Central Bank is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." Shapiro, 123 F.3d at 720. Accordingly, liability may not generally attach to a public auditor for unaudited public statements the company made, which is the case with Warnaco's quarterly statements. See Wright, 152 F.3d at 175 ("[Company's] press release did not attribute any assurances to Ernst & Young

---

[2]    Plaintiffs fail to allege that the audited annual statements were "incorporated by reference" into Warnaco's quarterly statements, rendering Deloitte responsible for the latter. The fact that the quarterly statements referred investors "for further information" to the audited annual statements is insufficient for incorporation by reference. See Markewich v. Adikes, 422 F. Supp. 1144, 1147 (E.D.N.Y. 1976); see also 17 C.F.R. § 240.12b-23(a)(3) (requiring, for incorporation by reference into Form 10-Q, that "copies of any information or financial statement incorporated into a registration statement or report by reference, or copies of the pertinent pages of the document containing such information or statement, shall be filed as an exhibit to the statement or report").

and, in fact, did not mention Ernst & Young at all. Thus, Ernst & Young neither directly nor indirectly communicated misrepresentations to investors."); Shapiro, 123 F.3d at 721 (noting that "if an accountant does not issue a public opinion about a company, although it may have conducted internal audits or reviews for portions of the company, the accountant cannot subsequently be held responsible for the company's public statements issued later merely because the accountant may know those statements are likely untrue") (quoting In re Cascade, 894 F. Supp. at 443); In re Rent-Way Sec. Litig., 209 F. Supp.2d 493, 504 (W.D. Pa. 2002) (allegations of misstatements in unaudited quarterly statements that did not identify auditor by name were insufficient to state a claim under Section 10(b)); In re Kendall Square Research Corp. Sec. Litig., 868 F. Supp. 26, 28 (D. Mass. 1994) ("[A]llegations that Price Waterhouse reviewed and approved the quarterly financial statements and the Prospectuses do not constitute the making of a material misstatement; at most, the conduct constitutes aiding and abetting and is thus not cognizable under Section 10(b).").

Plaintiffs' reliance on In re Global Crossing, Ltd. Securities Litigation, 322 F. Supp.2d 319 (S.D.N.Y. 2004) is unavailing. In that case, the plaintiffs sought to attribute to Arthur Andersen unaudited statements which they alleged Andersen materially assisted in preparing. The Court accepted the

plaintiffs' argument with respect to some statements, but rejected it as to others. It observed that to hold an auditor responsible for statements it did not itself make, a plaintiff must allege "sufficient facts that demonstrate that a defendant was personally responsible for making those statements, even if he or she is not identified as the speaker." Global Crossing, 322 F. Supp.2d at 331. The Court then held that "[a]llegations that Andersen 'prepared, directed or controlled,' 'helped create' or 'materially assisted in' preparing false statements issued by Global Crossing place its involvement well beyond the realm of 'aiding and abetting' liability precluded by Central Bank." Id. at 334.

Even if substantial participation in preparation of an unaudited statement is sufficient for primary liability under

Section 10(b),[3] plaintiffs do not allege such participation by Deloitte in this case. All that plaintiffs allege is that Deloitte "examined and reviewed" the quarterly statements, and that it attended quarterly review meetings. These allegations do not rise to the level of involvement deemed sufficient in Global Crossing. See id. at 333 (allegations that accountant "merely reviewed and approved" unaudited statements or was "instrumental in helping" company prepare them are insufficient to transcend the proscribed category of aiding and abetting liability under Section 10(b)).

Plaintiffs also seek to hold Deloitte responsible for failing to disclose a substantial understatement of reserves for returned merchandise in the FY1999 financial statement. According to the amended complaint, in mid-February 2000 Deloitte

---

[3]  As the Court in Global Crossing recognized, the leading cases from the Second Circuit adopted a 'bright line' test over a 'substantial participation' test for the threshold required for a secondary actor's conduct to implicate primary liability under Section 10(b). See Wright, 152 F.3d at 175; Shapiro, 123 F.3d at 720. Although the Court opined that a subsequent decision has moved toward the 'substantial participation' test, that case involved, as the Court recognized, a corporate insider rather than an outside actor like a public auditor. See In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 75-76 (2d Cir. 2001) (company vice president could be liable for misstatements disseminated by the company where he "was primarily responsible" for communications with investors and analysts and was "involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements"). As was also noted in Global Crossing, the In re Scholastic opinion discusses neither Wright, Shapiro, nor Central Bank.

discovered that Warnaco had understated the value of such reserves by $26,000,000. Amend. Compl. ¶¶ 59-60, 75. Neither Deloitte nor Warnaco disclosed this fact, however, until March 29, 2001, following the commencement of an SEC investigation into Warnaco's finances. Id. ¶ 60. Warnaco's stock price declined after the corrective disclosure was made. Id. ¶ 4.

This alleged omission is not actionable in this case. The amended complaint expressly states that Deloitte discovered the understatement in mid-February 2000, but failed to disclose it in the FY1999 financial statement. Both events took place before the class period. Since plaintiffs do not allege that Deloitte discovered the falsehood within the class period, they cannot maintain a claim against Deloitte for failing to correct. Cf. In re Int'l Bus. Machs. Corporate Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998) ("[A defendant] is liable only for those statements made during the class period."). Were plaintiffs permitted to do so, all knowing misstatements made before the class period, which remain uncorrected, would be actionable within the class period on an omission theory.

Plaintiffs also allege that Deloitte failed to publicly disclose in October 2000 that Warnaco was no longer in compliance with its debt covenants. Amend. Compl. ¶ 173. The amended complaint, however, does not allege facts showing that Deloitte had a duty to disclose this information. First, there is no

allegation that Deloitte was aware that Warnaco was in default under its credit agreement. Although plaintiffs allege that the true numbers for Warnaco's cash and long term indebtedness were made known to Deloitte by November 3, 2000, and issued in a press release the day before, they also allege that Warnaco changed those numbers before issuing the false interim statement on November 14, 2000. There is no allegation that Deloitte knew that Warnaco's changed numbers were fictitious. Moreover, even had Deloitte discovered that Warnaco was in default, there is no allegation that Deloitte made a contrary prior statement that it had a duty to correct within the class period. The fact that Warnaco defaulted under its credit agreements in October 2000 did not render any of Deloitte's prior statements false, thereby giving rise to a duty to correct. In addition, Deloitte had no duty to correct Warnaco's false November 14, 2000 quarterly statement, which it did not audit. See Wright, 152 F.3d at 175; IIT, 619 F.2d at 927.

Finally, plaintiffs argue that Deloitte is responsible for the misstatements made in the FY2000 financial statement. This statement is alleged to have been audited by Deloitte and to have contained numerous significant falsehoods. See Amend. Compl. ¶ 160. Deloitte responds that, because its audit opinion included a "going concern" qualification, the financial statement as a whole could not, as a matter of law, be deemed misleading.

Deloitte cites no authority for the proposition that a "going concern" qualification insulates a public auditor from any liability for material misstatements made in conjunction with the qualification. <u>But see</u> <u>Drabkin v. Alexander Grant & Co.</u>, 905 F.2d 453, 455-56 (D.C. Cir. 1990) ("Issuing a going concern opinion may not insulate an accounting firm from liability but it must cut strongly in its favor.") (citation omitted); <u>see also</u> <u>In re Spiegel, Inc. Sec. Litig.</u>, No. 02 C 8946, 2004 WL 1535844, at *42 (N.D. Ill. July 8, 2004) ("Nor is [accounting firm] entitled to dismissal because it threatened to issue a going concern statement in the 2001 Form 10-K and 'never backed down.'"). Although the fact finder may determine that the financial statement as a whole was not misleading, it cannot be so deemed as a matter of law solely by reason of Deloitte's "going concern" qualification.

B.  <u>Loss Causation</u>

Thus, the only actionable misstatements and omissions in the amended complaint are Deloitte's failure to disclose the Designer Holdings errors, and the misstatements in the FY2000 financial statement.  Plaintiffs, however, fail to plead loss causation with respect to either.

An essential element of a claim for securities fraud is loss causation.  <u>Dura Pharm., Inc. v. Broudo</u>, 125 S. Ct. 1627, 1629 (2005).  This requirement is codified in the PSLRA, which provides that "[i]n any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  A securities fraud plaintiff "must allege both transaction loss, <u>i.e.,</u> that <u>but for</u> the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, <u>i.e.,</u> that the subject of the fraudulent statement or omission was the cause of the actual loss suffered."  <u>Suez Equity Investors, L.P. v. Toronto-Dominion Bank</u>, 250 F.3d 87, 96 (2d Cir. 2001) (emphasis in original).

The Supreme Court has recently rejected the theory that artificial inflation of a security's purchase price is, without

more, sufficient to establish loss causation.[4]  See Dura Pharm., 125 S. Ct. at 1629.  Such a theory, the Court observed, "would allow recovery where a misrepresentation leads to an inflated purchase price but nonetheless does not proximately cause any economic loss."  Id. at 1633; see also Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 186 (2d Cir. 2001) ("The loss causation requirement is intended to fix a legal limit on a person's responsibility, even for wrongful acts.").

Although the Supreme Court observed that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind," Dura Pharm., 125 S. Ct. at 1634, it did not specifically explain what allegations would suffice to plead loss causation.  In Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), the Second Circuit addressed that issue.  The Court held that a plaintiff can plead loss causation by alleging either that (1) "the market reacted negatively to a corrective disclosure regarding the falsity" of the defendant's misstatements, or (2) that the defendant "misstated or omitted risks that did lead to the loss." Lentell, 396 F.3d at 175; see also Fogarazzo v. Lehman Bros.,

---

    [4]    This was the law of this Circuit even before Dura Pharmaceuticals.  See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 198 (2d Cir. 2003).

<u>Inc.</u>, No. 03 Civ. 5194 (SAS), 2004 WL 1151542, at *10 (S.D.N.Y. May 21, 2004) (it is "enough that (1) the misrepresentation artificially inflated the value of the security, or otherwise misrepresented its investment quality, and (2) the <u>subject</u> of the misrepresentation <u>caused</u> the decline in the value of the security").

The amended complaint alleges that, as a result of Deloitte's misrepresentations and omissions, "plaintiffs and other members of the Class acquired Warnaco common stock during the Class Period at artificially inflated high prices and were damaged thereby." Amend. Compl. ¶ 353. As noted, the mere artificial inflation of Warnaco's stock price is insufficient to plead loss causation. The amended complaint further alleges, however, that as a result of Deloitte's conduct "Warnaco was not shut down in early October 2000 when, in reality, it was in clear default on its credit agreements." <u>Id.</u> ¶ 4. Plaintiffs also allege that in April 2001, Deloitte failed to publicly disclose "the financial chaos within Warnaco," and that Warnaco's "true financial condition and internal chaos ... prevented [it] from obtaining waivers from its lenders of its default on its credit agreement during March – June 2001, caused its stock price to decline to almost zero, and forced Warnaco to file for bankruptcy protection on June 11, 2001." <u>Id.</u>

With respect to Deloitte's failure to disclose the Designer Holdings errors, the amended complaint contains no allegations that these errors, which Deloitte discovered in the fall of 2000 and which were publicly corrected after Warnaco's bankruptcy, played any part in the fall of Warnaco's stock price or the company's ultimate demise.  The only loss causation allegation for the period prior to April 2001 is that "Warnaco was not shut down in early October 2000" when it allegedly should have been because it was in default under its credit agreements.  As already discussed, however, Deloitte was under no duty to disclose Warnaco's default since it is not alleged to have made a prior contrary statement or to have known that Warnaco's published numbers, which indicated it was not in default, were fabricated.

As for the falsehoods contained in the FY2000 financial statement, plaintiffs allege that Deloitte's misrepresentations caused their loss because "Warnaco's true undisclosed financial condition rendered Warnaco unable to obtain waivers and caused it to have to file for bankruptcy."  Id. ¶ 169.  Under Second Circuit law, however, this allegation is insufficient to plead loss causation.

To plead that Deloitte's misstatements and omissions in the FY2000 financial statement caused their loss, plaintiffs must allege facts establishing that Deloitte concealed "some or all of

the risk that materialized." Lentell, 396 F.3d at 177.  Here,
that risk, according to the amended complaint, was Warnaco's
inability to obtain permanent waivers from its creditors, which
pushed the company into bankruptcy.  Amend. Compl. ¶ 169.  That
risk, however, was unambiguously disclosed in Deloitte's audit
opinion accompanying the FY2000 financial statement.  Deloitte
warned that Warnaco "was not in compliance with certain covenants
and has a working capital deficiency," and that it may therefore
not be able to carry on as a going concern.

In Lentell, the Second Circuit specifically addressed the
question of what a plaintiff must allege to plead loss causation
where the allegedly fraudulent statement itself disclosed the
risk of loss that ultimately materialized:

> [W]here (as here) substantial indicia of the risk
> that materialized are unambiguously apparent on
> the face of the disclosures alleged to conceal the
> very same risk, a plaintiff must allege [in order
> to plead loss causation] (i) facts sufficient to
> support an inference that it was defendant's
> fraud--rather than other salient factors--that
> proximately caused plaintiff's loss; or (ii) facts
> sufficient to apportion the losses between the
> disclosed and concealed portions of the risk that
> ultimately destroyed an investment.

Id. 396 F.3d at 177.  Here, plaintiffs have alleged neither.  The
amended complaint contains no allegations relating to the
apportionment of plaintiffs' losses between the disclosed and
concealed portions of the risk that materialized.  Nor do
plaintiffs allege any facts from which it may be inferred that
Deloitte's failure to unmask the full depth of Warnaco's troubles
in the FY2000 financial statement contributed to Warnaco's
inability to obtain waivers or Warnaco's ultimate demise.
Plaintiffs' assertion that "Warnaco's true undisclosed financial

condition rendered Warnaco unable to obtain waivers" is conclusory and does not allege any facts in its support. It is insufficient "to support an inference that it was defendant's fraud--rather than other salient factors--that proximately caused plaintiff's loss." Id.

## Breach of Fiduciary Duty

II.

Deloitte also moves to dismiss plaintiffs' claim of breach of fiduciary duty. An accounting firm retained to audit the financial statement of a company does not stand in a fiduciary relationship with that company's shareholders.[5] See Tal v. Superior Vending, LLC, 799 N.Y.S.2d 532, 533 (2d Dep't 2005) (accountant who rendered services to corporation owed no fiduciary duty to a fifty percent shareholder in corporation); Hamer v. Chessman, 514 N.Y.S.2d 243, 244 (1st Dep't 1987) (same); Facchini v. Miller, No. CV 990587686S, 2000 WL 175580, at *4 (Conn. Super. Ct. Jan. 31, 2000) (accountant owed no fiduciary duty to plaintiff shareholder who merely alleged reliance on financial information generated by accountant); see also BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp.2d 968, 987 (S.D.N.Y. 2003) ("[W]hen the allegedly aggrieved party is at best a third party to an accountant-client relationship, and no commercial transaction is executed between two parties-- indeed, when no relationship whatsoever exists between two parties--no fiduciary duties may be imposed on either party.") (quoting Greenblatt v. Richard Potasky Jewelers, No. 93 Civ. 3652 (LMM), 1994 WL 9754, at *4 (S.D.N.Y. Jan 13, 1994)). The complaint therefore fails to state a claim against Deloitte for breach of fiduciary duty.

CONCLUSION

For the foregoing reasons, Deloitte's motion to dismiss the complaint is granted.


SO ORDERED.


Dated:  New York, New York
        September 21, 2005

---

[5] Both parties have cited authorities from New York and Connecticut on this issue. Because there is no substantive difference between the laws of these jurisdictions, no choice of law question arises. See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter ... unless the laws of the competing jurisdictions are actually in conflict.").

S/ _____
　　　MIRIAM GOLDMAN CEDARBAUM
　　United States District Judge